**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-30581
(Summary Calendar)

UNITED STATES OF AMERICA,
*ex rel*. MINNA REE WINER CHILDREN'S
CLASS TRUST, in its own behalf, *Qui tam*

Plaintiff-Appellant,

versus

REGIONS BANK OF LOUISIANA,

and

REGIONS BANK OF LA, erroneously referred to as
Regions Bank, Federal Savings Bank;
FOUNTAINBLEAU STORAGE ASSOCIATES,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-4085-A)

March 13, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

In this *qui tam* action, Minnie Ree Winer Children's Class Trust ("appellant"), appeals the

district court's grant of summary judgment in favor of the defendants Regions Bank of Louisiana

("Regions") and Fountainbleau Storage Associates ("FSA"). In a separate motion, Appellant seeks

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

to have the record on appeal modified to include the affidavit of Ray L. Verges or alternatively to strike a portion of the record. In addition, Appellant seeks sanctions against Appellee FSA.

In response FSA does not oppose Appellant's attempt to supplement the record on appeal. Instead, FSA withdraws a portion of its appellate brief and urges that the affidavit of Ronald von Kurnatowski should also be included in the record. Naturally, FSA opposes the motion for sanctions.

## FACTS

In 1993, the principals of Fountainbleau Storage Associates ("FSA"), Burnham Storage Associates, Roland von Kurnatowski ("Kurnatowski"), and Mike Aufrect, entered into negotiations with Secor Bank, the predecessor of Regions Bank of Louisiana ("Regions"), for the purchase of the Bayou Plaza Property (the "property"), a failing New Orleans hotel. The principals of FSA intended to convert the hotel into a mini-storage facility. The parties agreed upon a sales price of $1.5 million and proceeded toward closing. Secor, pursuant to a previous Settlement Agreement, was required to obtain approval by the Federal Deposit Insurance Corporation ("FDIC") before any sale of the property could be consummated, however. Secor discharged its duty faithfully and the FDIC was allowed to review all the closing documents concerning the sale of the property. Shortly before closing the deal, the three principals formed FSA, a Louisiana general partnership. On December 29, 1993, the deal closed. Secor sustained a substantial book loss from the sale of the property. As a result, Secor received partial reimbursement (60%) from the FDIC in the form of a $711,280 debit to a Special Reserve Account ("SRA"), pursuant to the terms of the Settlement Agreement.

On December 20, 1994, the Minna Ree Winer Children's Class Trust ("appellant"), acting on behalf of the United States, sued Regions under the *qui tam* provisions of the False Claims Act ("FCA"). Appellant alleged that Regions concocted a fraudulent transaction to obtain reimbursement

2

from the FDIC. Later, the complaint was amended to add FSA as a co-conspirator in the scheme to defraud the FDIC. Ult imately, the government declined to intervene. The original and amended complaints were served on the defendants in January, 1996. Regions filed an answer, followed by a motion for summary judgment. FSA filed a motion for summary judgment in lieu of an answer. On May 17, 1996, the district court granted both motions and ordered the appellant to pay defendants' reasonable attorneys' fees, finding that appellant's case was "frivolous and meant to harass the defendants . . . ." R. Vol. V at 1181.

Before the district court and on appeal the appellant argues that the difference between the sale price of the property ($1.5 million) and the fair market value as per the Orleans Parish tax assessments for 1989 through 1993 ($4 million), together with other evidence, operated to constitute a "badge of fraud," sufficient for a jury to find that the appellees conspired to file a false claim within the meaning of the FCA. In a separate motion, appellant seeks to have the record modified on appeal to include the affidavit of Ray L. Verges ("Verges"), a tax assessor for the city of New Orleans, or alternatively to have pages 806 through 809 contained in volume IV stricken. Appellant also seeks sanctions against FSA.

In response, FSA does not oppose appellant's motion to modify the record, but does oppose the request for sanctions. Moreover, FSA withdraws a portion of its appellate brief and argues that in the interest of balance the affidavit of Ronald von Kurnatowski ("Kurnatowski") should be included in the record.

**DISCUSSION**

3

## I. Standard of Review

"Summary judgment is reviewed de novo, under the same standards the district court applies to determine whether summary judgment is appropriate." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 321 (1986). A nonmovant "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In fact, when opposing a summary judgment motion, the nonmoving party must "do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'" Id. at 587 (*quoting* Fed. R. Civ. P. 56(e); emphasis in original).

In *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc), this court stated, "[w]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. <u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.</u>" *Id.* at 1075 (emphasis in original).

## II. There is no genuine issue of material fact remaining in this case

In support of their motions for summary judgment, the appellees offered evidence that they had engaged in arm's length negotiations. Against the great weight of this evidence, appellant argues that the $4 million dollar tax assessment when compared with the sale price indicates a sham transaction. Yet, the low sale price was the result of several factors unrelated to the tax assessment. First, the property was deteriorating rapidly and the decay was visible. Second, the property lacked marketability. Third, property was encumbered by a ground lease to another party who had to be bought out. Fourth, it was discovered that the property had significant structural and environmental problems. Thus, even allowing the record to be supplemented with the affidavit of Verges, appellant does not create a genuine issue of material fact that the property was worth substantially more to a willing buyer than the price paid by FSA.

Furthermore, there is no genuine issue of material fact as to whether Secor misled the FDIC. The FDIC was fully aware of the transaction between FSA and Secor. Secor corresponded with the FDIC throughout the negotiations. In a letter dated November 10, 1993, Mike Paternostro, a Secor employee, notified Bill Nockels of the FDIC that Secor expected "sell the property for $2,000,000 and debit the SRA for the already agreed upon loss sharing for $3,300,000 . . . ." R. Vol. IV at 986-87. Moreover, when the environmental and structural problems were identified in reports, Paternostro immediately notified the FDIC. By a letter dated December 16, 1993, Secor requested the FDIC's approval of the transaction, which was granted.

Finally, there are no genuine issues of material fact in dispute in this case. Thus, we find that the district court's grant of summary judgment in favor of appellees was proper.

**III. The district court properly awarded attorneys' fees**

The FCA gives the district court discretion to award attorneys' fees to a prevailing defendant when the court finds that the case is frivolous, vexatious or harassing. The FCA provides as follows:

> "[i]f the Government does not proceed with the action and the person bringing the actions conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment."

31 U.S.C. § 3730(d)(4). In accordance with the district court's instructions, the appellees submitted statements of their attorneys' fees and cost incurred while defending this litigation. The court disallowed some portion of the totals. Regions was awarded $13,535.44, and FSA was awarded $10,107.41.

Previously, we have noted that due to a district court's "superior knowledge of the facts," it "has broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). In the instant case, the district court made the proper finding under 31 U.S.C. § 3730(d)(4), holding that the "ultimate goal" of the suit was to "vex and harass the defendants, Regions and FSA." R. Vol. V. at 1181. Given the fact that the appellant proceeded against the Regions and FSA without any evidence sufficient to create a genuine issue of material fact, the district court's award of attorneys' fees is appropriate.

## IV. Supplementing the record on appeal

Appellate courts have the inherent equitable authority to supplement the record on appeal. *See Ross v. Kemp*, 785 F.2d 1467, 1474-75 (11th Cir.) Recognizing our authority, we allow the affidavits of Verges and Kurnatowski into the record on appeal. Verges' affidavit merely states that

6

the 1993 tax assessment was available at the time of the sale of the property. Kurnatowski's affidavit explains the mistake concerning appellee FSA's copying of the tax bill.

## CONCLUSION

For the foregoing reasons and upon careful review of the record, even in its modified form, we AFFIRM the decision of the district court based upon its considered analysis in the "Order and Reasons" dated May 16, 1996.

IT IS ORDERED that the motion of Appellant to modify the record on appeal to include the affidavit of Ray L. Verges is GRANTED.

IT IS FURTHER ORDERED that the alternative motion of Appellant to strike a portion of the record on appeal is DENIED.

IT IS FURTHER ORDERED that the motion of Appellant for sanctions against Appellee FSA is DENIED.

IT IS FURTHER ORDERED that FSA's request that the affidavit of Ronald von Kurnatowski be filed with the appellate record is GRANTED.

MOTION DENIED in part GRANTED in part; JUDGMENT AFFIRMED.